IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-HC-2169-BO

FILED
MAR 1 6 2010
DENNIS P. IAVARONE, CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

| | |
|---|---|
| TIMOTHY HENNIS, ) | |
| Petitioner, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| FRANK HEMLICK, et al., ) | |
| Respondents. ) | |

Before the court is Timothy Hennis' (hereinafter "Hennis" or "petitioner") petition for a writ of habeas corpus under 28 U.S.C. § 2241. Hennis, through counsel William O. Richardson and Eric J. Allen, requests an evidentiary hearing, discovery, and emergency relief in that the pending general court martial be stayed until the proceedings in this section 2241 petition are concluded.

Hennis is a retired Master Sergeant in the Army. Court-martial proceedings brought against him have begun at Fort Bragg, North Carolina, for a triple murder which occurred in 1985. He seeks relief in habeas from this prosecution by asserting the military lacks jurisdiction to court martial him. On December 28, 2009, the petition was filed in this court. Thereafter, the court entered an expedited scheduling order due to the impending military trial. Respondents filed a motion to dismiss or in the alternative, motion for summary judgment. On February 26, 2010, after the filing of the response and reply, a motion hearing was held. On March 1, 2010, the court directed respondents to file by March 8th a supplemental memorandum addressing double jeopardy, abstention, exhaustion, and petitioner's status as a member of the military during the time between his expiration of term of service ("ETS") date, which allegedly occurred during his State incarceration, his subsequent release from State custody, and his re-enlistment.

Petitioner was allowed until March 15, 2010, to respond. On March 2, 2010, petitioner filed a renewed request for a stay to which respondents filed a response. The matters are ripe for determination.

A.  Factual Background

On or about May 9, 1985, Kathryn Eastburn and 2 of her 3 young daughters were brutally murdered in their home. The home was located less than a mile from the gate to Fort Bragg, North Carolina. Kathryn Eastburn was the wife of a captain in the Air Force who was out of state on temporary assignment at Maxwell Air Force Base in Alabama at the time of the murders.

Hennis was an enlisted soldier who entered the military on a delayed entry program in October of 1980 and entered active duty on January 29, 1981. At the time of the murders, Hennis was on active duty stationed at Fort Bragg as a Sergeant (E-5). A few days before the murders, he had purchased a dog from the Eastburns. On May 16, 1985, Hennis was arrested by the Cumberland County Sheriff's Office and placed on pretrial confinement.

On July 4, 1986, Hennis was convicted in North Carolina Superior Court of Cumberland County on three counts of premeditated murder and one count of rape. On July 9, 1986, Hennis was sentenced to death and transferred to the North Carolina Department of Correction. On October 6, 1988, the North Carolina Supreme Court reversed Hennis' conviction and ordered a new trial. After a new trial, Hennis was acquitted of the rape and murders on April 19, 1989.

Two days later, on April 21, 1989, Hennis returned to the Army and reported to Fort Knox, Kentucky. In June 1989, Hennis re-enlisted for four years which was subsequently extended in 1992, 1996, and 2001. Hennis retired from the Army on July 13, 2004.

In 2006, after a cold case review, the North Carolina State Bureau of Investigation determined DNA evidence, obtained from the sperm fraction of the vaginal swab, matched the

DNA profile obtained from Hennis' blood sample. On September 14, 2006, Hennis was recalled from retired status to active duty to face court-martial charges. On November 10, 2006, he was charged with three counts of premeditated murder in the military tribunal. The rape charge was dismissed on statute of limitations grounds. (A.R. at 363) The case is being pursued capitally. The court martial commenced March 2, 2010.

B. Procedural History

On December 21, 2007, petitioner filed three motions in military court seeking dismissal of the court-martial charges for lack of jurisdiction.[1] On April 28, 2008, a military judge denied petitioner's motions and issued separate written findings of fact and conclusions of law. On May 15, 2008, petitioner filed a petition for Extraordinary Relief in the nature of a Writ of Mandamus, Writ of Habeas Corpus, and Writ of Prohibition to the United States Army Court of Criminal Appeals ("ACCA"). On May 19, 2008, ACCA issued an order staying all court-martial proceedings. Thereafter, the government submitted a motion to reconsider. On May 20, 2008, ACCA permitted the motion to reconsider in part in that the court martial was allowed to proceed on the motions practice, but directed the stay be continued for the assembly of the court martial and trial on the merits. On June 25, 2008, ACCA denied petitioner's request for oral argument and the petition for extraordinary relief. On July 15, 2008, petitioner submitted a writ-appeal petition to the Court of Appeals for the Armed Forces ("CAAF"), which was denied without prejudice on September 26, 2008. On October 1, 2008, ACCA lifted the stay of the court-martial proceedings. On December 28, 2009, the habeas petition was filed in this court.

---

[1] The jurisdictional question was brought in three motions each asserting the loss of jurisdiction on an individual basis, one for lack of "service connection," one for "break in service," and one for retired/reserve status.

3

C. <u>Presented Issue</u>

Hennis asserts the military lacks jurisdiction to court martial him because of a "break in service" which relieves Hennis from court martial for any crimes committed in a prior enlistment period from which he has been discharged. <u>Hirshberg v. Cooke</u>, 336 U.S. 210 (1949) (holding the military was not entitled to institute court-martial proceedings against a service member for offenses committed during an earlier enlistment - which had expired and from which he had been honorably discharged - even though he had re-enlisted the day after being discharged).

D. <u>Discussion</u>

    i. <u>Motion to Dismiss or in the Alternative for Summary Judgment</u>

Because the court has considered matters outside of the pleadings, the motion shall be considered as one for summary judgment. Fed. R. Civ. P. 12(d). Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, but "must come forward with 'specific facts showing that there is a genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). A trial court reviewing a summary judgment motion should determine whether a genuine issue of material fact exists for trial. <u>Anderson</u>, 477 U.S. at 249. The court construes the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in the non-movant's favor. <u>Matsushita</u>, 475 U.S. at 588.

### ii. Court-Martial and the Uniform Code of Military Justice ("UCMJ")

Congress has empowered commanders in the armed forces with the authority to implement the military justice system. 10 U.S.C. Chapter 47, the Uniform Code of Military Justice. Service members are tried for alleged crimes by court martial convened by a general officer who has been granted authority by the Secretary of a military department. Rule for Court-Martial ("RCM") 504. The Uniform Code of Military Justice ("UCMJ") sets out the statutory process by which a military trial may exercise court-martial jurisdiction over a service member. Article 2 of the UCMJ and supplemented by Article 3; 10 U.S.C. §§ 802-803. Military judges are empowered to hear and rule on trial and pretrial motions, including jurisdictional challenges. RCM 801(a). A general court-martial consists of a military judge and not less than five members, a prosecutor, and defense counsel. RCM 501(a)(1)(A). In all capital cases, general courts-martial consist of a military judge and no fewer than twelve members, unless twelve members are not reasonably available because of physical conditions or military exigencies. RCM 501(a)(1).

After a sentence is adjudged in a court martial, the accused may submit written matters reasonably tending to affect the convening authority's decision to approve or disapprove of the finding of guilt and/or sentence. RCM 1105 (a) and (b). The right to appeal a court martial finding or sentence is statutorily created by the UCMJ. The findings and sentence approved by the convening authority may be appealed to the service Court of Criminal Appeals. 10 U.S.C. § 866. An Army case involving imprisonment of more than one year is automatically appealed to the Army Court of Criminal Appeals ("ACCA"), unless waived. Id. Appeal may then be made to the Court of Appeals for the Armed Forces ("CAAF") and the United States Supreme Court.

10 U.S.C. § 867; 28 U.S.C. § 1259. In a case and conviction in which a sentence "extends to death," CAAF shall review the record. 10 U.S.C. § 867(a).

Service members may petition ACCA and CAAF in exceptional circumstances for extraordinary relief as an interlocutory appeal. ACCA and CAAF have discretion to issue such extraordinary writs under the All Writs Act. 28 U.S.C. § 1651 (1992). Because of the "extremely heavy burden" necessary to grant a writ, the denial may be entered without prejudice and reviewed within the normal appellate process. 10 U.S.C. §§ 866, 867; Dew v. United States, 48 M.J. 639, 648 (Army Ct. Crim. App. 1997).

    iii.    <u>Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241</u>

"[T]he writ of habeas corpus occupies a position unique in our jurisprudence . . as the ultimate safeguard against unjustifiable deprivation of liberty." <u>Schlesinger v. Councilman</u>, 420 U.S. 738, 752 (1975). "Habeas corpus proceedings have been and remain by far the most common form of collateral attack on court-martial judgments; but historically they have not been the exclusive means of collateral attack." <u>Id.</u> at 747. Just as in <u>Councilman</u>, this case "does not concern a collateral attack on a court-martial judgment, at least in the normal sense, since there [is] no judgment to attack." <u>Id.</u> Yet, it asserts issues of jurisdiction and a claim for equitable relief which do not "go beyond recognized grounds for collateral attack." <u>Id.</u> at 749. In attempting to collaterally attack the military's authority to convene the court-martial, <u>Councilman</u> concluded a suit such as the one before this court "stands on precisely the same footing as suits seeking possible post judgment forms of collateral relief." <u>Id.</u>

While the court has plenary authority to review the matter, <u>Councilman</u> is further instructive on whether such review is nonetheless appropriate. Specifically, <u>Councilman</u> holds, as a general rule, where members of the armed forces file habeas petitions seeking relief from the

6

military restraint of liberty, federal civil courts should not entertain petitions until all available remedies within the military court system have been exhausted. Councilman also states while the District Court (or civilian court) has subject-matter jurisdiction for collateral review in habeas, "the balance of factors governing the exercise of equitable jurisdiction by federal courts normally weighs against intervention, by injunction or otherwise, in pending court-martial proceedings." Id. at 740. The Court held while there was no question the soldier would be tried, his conviction "was a matter entirely of conjecture." Id. at 754. Thus, the only injury would be "that incidental to every criminal proceeding brought lawfully and in good faith." Id. at 755 (citations omitted). The Court stated "the practical considerations supporting both the exhaustion requirement in habeas corpus and the federal equity rule barring intervention into pending state criminal proceedings except in extraordinary circumstances are similar to those that underlie the requirement of exhaustion of administrative remedies." Id. at 756. "These considerations apply in equal measure to the balance governing the propriety of equitable intervention in pending court-martial proceedings." Id. Thereby, the Court instructed "when a serviceman charged with crimes by military authorities can show no harm other than that attendant to resolution of his case in the military court system, the federal district courts must refrain from intervention, by way of injunction or otherwise." Id. at 758.

In 2006, the Supreme Court reaffirmed and expounded on Councilman in Hamdan v. Rumsfeld, 548 U.S. 557, 586 (2006). In Hamdan, the Court found Councilman to identify two considerations of comity which "favor abstention pending completion of ongoing court-martial proceedings against service personnel." Id. at 586 (citations omitted). "First, military discipline and, therefore, the efficient operation of the Armed Forces are best served if the military justice system acts without regular interference from civilian courts. Second, federal courts should

respect the balance that Congress struck between military preparedness and fairness to individual service members when it created an integrated system of military courts and review procedures, a critical element of which is the Court of Military Appeals consisting of civilian judges completely removed from all military influence or persuasion . . . ." Id. at 586 (citations and quotations omitted). The Court continued that "[j]ust as abstention in the face of ongoing state criminal proceedings is justified by our expectation that state courts will enforce federal rights, so abstention in the face of ongoing court-martial proceedings is justified by our expectation that the military court system established by Congress-with its substantial procedural protections and provision for appellate review by independent civilian judges-will vindicate servicemen's constitutional rights." Id. (citations and quotations omitted).

Hennis argues, however, that several military cases have not required exhaustion of remedies in the military system before allowing collateral review. While there are exceptions to exhaustion, the courts have intervened because of the unique position of the individual subject to court martial. See, e.g., Hamdan v. Rumsfeld, 548 U.S. 557 n. 16 (2006) (holding that Councilman distinguished service personnel from civilians and "abstention is not appropriate in cases in which individuals raise 'substantial arguments denying the right of the military to try them at all,' and in which the legal challenge 'turn[s] on the status of the persons as to whom the military asserts its power"); Toth v. Quarles, 350 U.S. 11, 13 and 23 (1955) ("At the time of the arrest [Toth] had no relationship of any kind with the military." The Court held "[t]hat Congress cannot subject civilians like Toth to trial by court martial. They, like other civilians, are entitled to have the benefit of safeguards afforded those tried in the regular courts authorized by Article III of the Constitution."). Hennis attempts to establish that these case are decisive because there

was a "break in service," a period of time after the crime in which he was a civilian, before re-enlistment. Thus, he contends these cases, along with Hirshberg, apply.

In the case before this court, the question is one of material fact mired in time lines, expiration of term of service dates ("ETS"), discharge dates, re-enlistment dates, the military code, and military regulations. We have an enlisted soldier who was on active duty when the crime occurred. Hennis was convicted in the North Carolina State court of the crimes; he served time for the crimes on death row; after state appellate review, he was re-tried and acquitted. It appears from the records that upon leaving incarceration, petitioner returned to the Army and reported to Fort Knox, Kentucky. At that point while Hennis remained at the Army base, the Army resolved his status as they saw appropriate, and thereafter, Hennis had a long military career. The specifics of the argued break in service and whether this alleged break protects him from the reach of a military court martial is at issue. It is disputed ardently by both sides.

As such, the cases Hennis relies on are distinguishable from his contested status at a past point in time. There was no question as to the individual's status in Hamdan - he was an alien detained at Guantanamo Bay - or in Toth - he had no relationship with the military at the time of his arrest. This is not the situation here, and Hennis' status does not present the unique circumstances of Hamdan or Toth that mandate intervention of an ongoing court martial.

The issues Hennis has raised before this court may be plausible defenses at the court martial, as well as, appealable issues if the outcome ends in a conviction. Attempting to resolve any of these questions would be inappropriate at this time with a court martial in progress. Therefore, as the circumstances are set out, this court, like that in Councilman, "discerns nothing that outweighs the strong considerations favoring exhaustion of remedies or that warrants intruding on the integrity of the military court processes." Id. at 761.

Accordingly, respondents' motion for summary judgment is ALLOWED. The matter is DISMISSED without prejudice to allow for the full exhaustion of remedies within the military court. Therefore, the stay is likewise DENIED.

SO ORDERED, this 16 day of March 2010.

                                            TERRENCE W. BOYLE
                                            UNITED STATES DISTRICT JUDGE